FORT WORTH WAREHOUSE & STORAGE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3864.    Promulgated March 16, 1927.

If a debt is ascertained to be worthless and charged off within the taxable year, the right to deduct it from gross income is not affected by the fact that the amount of the debt is later recovered.

*H. S. Lattimore, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

This proceeding is to redetermine deficiencies in income and profits tax for the years 1920 and 1921, totaling $2,304.10.

There are two issues: (1) The right of the petitioner to deduct an alleged bad debt in 1921; and (2) the proper rate of depreciation of petitioner's warehouse for each of the years 1920 and 1921, the petitioner claiming 3 per cent and the respondent having allowed 2 per cent.

### FINDINGS OF FACT.

The petitioner is a Texas corporation with its principal place of business at Fort Worth.

In the early part of 1920 the petitioner received from a railroad company for storage a shipment of automobile bodies consigned to the Texas Motor Car Co. The arrangement for their storage was made with an officer of the petitioner orally by an agent of the railroad company. The railroad company had not delivered them to the consignee because the latter was not able to pay the freight charges thereon. No warehouse receipt was issued. Storage charges accumulated and bills were made and sent to the railroad company, and in 1921, when the petitioner pressed the railroad company for their payment, the latter denied liability therefor and asserted that in placing the goods in storage it had acted for the consignee. Thereupon, the petitioner instituted suit against the railroad company and the Texas Motor Car Co. for recovery of the amount claimed to be due. The railroad company answered and denied liability. Shortly thereafter the Texas Motor Car Co. went into a receivership. After an investigation, including an inspection of the receiver's report, the petitioner's attorney advised it that there was no chance of collecting from the Texas Motor Car Co., as there were no assets from which to satisfy claims of general creditors, and he also advised petitioner that he did not believe judgment could be obtained against the railroad company. The petitioner then instructed its attorney in the latter part of 1921 to discontinue the action, which was done early in 1922. The petitioner charged off the amount of its claim in December, 1921.

The automobile bodies were of sheet steel, of a special design. In or about the month of September, 1921, the railroad company advertised the bodies for sale at public auction and sent notices of the proposed sale to the shipper. Although a number of persons inspected them, no bids were received. The bodies were turned over to the railroad company by petitioner at some time, but the evidence does not show when. In the latter part of 1925 they were still in the possession of the railroad company.

At a meeting of the board of directors of the petitioner held in January, 1922, the vice president and general manager reported that this account had been charged off as a loss. Thereupon, one of its

directors, who had extensive business relations with the railroad company, being a heavy shipper of freight on that railroad, undertook to collect the amount from it through negotiation, and subsequently the railroad company paid it.

The petitioner owns a warehouse situated in Fort Worth the construction of which was begun in 1914 and completed in 1915 or 1916.

OPINION.

LOVE: We will dispose of the claim for depreciation first. There is no evidence in the record as to the character of the building, of what material constructed, dimensions, manner of finish, or character of service to which it was subjected. We are totally unable to determine the useful life of the building, and hence must approve the determination of the Commissioner as to that claim.

We come now to the question of the right to charge off the alleged bad debt. There is no controversy in regard to the question of the existence of the claim for storage fees, nor as to the amount of such fees. The claim primarily was against the Texas Motor Car Co. Petitioner sought to hold the railroad company secondarily liable. That petitioner, beginning in 1920, had charged this claim on its books is evidenced by the fact that it billed the same to the railroad company from time to time until the railroad company affirmatively denied liability.

It then filed suit against the Texas Motor Car Co. and the railroad company. The railroad company answered denying liability. Its attorney then advised it that, by reason of the insolvency of the Texas Motor Car Co., a judgment against it would be worthless; that in view of the denial of liability by the railroad company and the fact that no warehouse receipt had been issued for the goods, there was but little chance of proving its case in court against that company, and he advised it to abandon the effort to collect the claim. The suit was abandoned and the debt charged off in 1921.

There is no escape from the conclusion, under the evidence, that petitioner had a debt due it for services rendered. That debt was due, primarily, by the Texas Motor Car Co. Petitioner was advised by its attorney that it probably could not prove liability on the part of the railroad company. The Texas Motor Car Co., after investigation, was known to be insolvent. We believe that, under the circumstances of this case, petitioner was fully justified in concluding in 1921 that the debt was worthless. That it was afterwards voluntarily paid by the railroad company does not affect its status as it existed in December, 1921. *Appeal of Egan & Hausman Co.*, 1 B. T. A. 556.

*Judgment will be entered on 15 days' notice, under Rule 50.*